IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

St. Claire Dreka,                    Civil Case No. _____

Plaintiff,

V

FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES;COMMUNITY
PARTNERSHIP FOR CHILDREN; SHAYLA RODNEY, CM, CPC in her
individual and official capacity; LATOYA ELLIOT, CS, CPC in her individual
and official capacity; JUDGE JOAN ANTHONY, Seventh Circuit Court, Volusia
County in her official capacity only, for proposes of injunctive relief

Defendants.

Relevant Non Defendants for Context
Judge Kathleen McNeilly, Seventh Circuit Judicial Court
Angela Hendry, FL DCF attorney
Kaitlyn Phillpot, FL DCF attorney
Jeffie Pierre, CS FL DCF
Anne Quinoes, Daytona Beach Lourdes Academy Guidance Counselor
William Gershwin, OCCR attorney
John Glugover, FL DCF attorney


**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND
DAMAGES –JURY TRIAL DEMANDED
(42 U.S.C. § 1983 – Procedural Due Process Violations)**


Table of Contents
**INTRODUCTION**................................................................................................2

**JURISDICTION AND VENUE**.........................................................................3

**PARTIES** .............................................................................................................3

**FACTUAL ALLEGATIONS** ..................................................................5

**CLAIMS FOR RELIEF** ...................................................................17

**EXHIBIT LIST** ............................................................................17

**LEGAL BASIS** ..............................................................................24

**PRAYER FOR RELIEF**....................................................................24

## INTRODUCTION

1.      This is a civil rights action brought under 42 U.S.C. § 1983 to redress

violations of Plaintiff's rights under the Fourth and Fourteenth Amendments to the

United States Constitution, the American Disabilities Act (ADA), and under the

jurisdictional authority of §§ 1331 and 1343,  to redress violations of Plaintiff's

federally protected rights arising from the approval and enforcement of a defective

case plan, unlawful interviews of minor children without parental consent and

denial of access to services and accommodations by state actors.

2.      Plaintiff's claims arise from the approval and enforcement of a case plan that

lacked basic procedural safeguards required by law. The plan was unsigned,

unacknowledged by the Plaintiff, and entered without notice, opportunity to object,

or meaningful review by the court.  The presiding judge permitted the dependency

Shelter hearing to proceed despite the opposing parties being represented by the

same attorney without written consent, and further engaged in coercive conduct by

verbally pressuring the Plaintiff to concede agreement to an unsigned case plan.

These procedural deficiencies stripped the Plaintiff of her fundamental right to be heard, resulting in a state-sanctioned deprivation of parental liberty without due process.

3.      Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages, for the deprivation of her fundamental liberty interest in the care and custody of her children without due process of law, as recognized by J.B. v. Florida Department of Children & Family Services, 768 So. 2d 1060 (Fla. 2000) and Smith v. City of Fontana, 818 F.2d 1411 (9th Cir. 1987).

## JURISDICTION AND VENUE

4.      This Court has jurisdiction under 28 U.S.C. §§ 1331 (Federal Question) and 1343.

5.      Venue is proper in this district under 28 U.S.C. § 1391(b), as the events giving rise to this claim occurred in Volusia County, Florida.

## PARTIES

6.      Plaintiff, St. Claire Dreka, is a resident of Daytona Beach, Florida, Volusia County and the biological mother of four minor children.

St. Claire Dreka     (Maiden Name: WHELAN)
433 Vermont Ave,
Daytona Beach, FL 32118
772-332-1403

7.      Defendant COMMUNITY PARTNERSHIP FOR CHILDREN employs the staff involved in the case plan administration.

3

COMMUNITY PARTNERSHIP FOR CHILDREN
Attn: LEGAL DERPARTMENT or EXECUTIVE DIRECTOR
135 Executive Circle, 2nd Floor
Daytona Beach, FL 32114
386-546-4900  Ext.1034

8.      Defendant Florida Department of Children and Families (DCF) is a state
agency responsible for child welfare services.

Florida Department of Children and Families (The Department)
Office of General Counsel]
2415 North Monroe Street, Suite 400
Tallahassee Fl 32303
Phone  (850) 488-2381
Fax     (850) 922-3947

9.      Defendant Shayla Rodney is a CPC caseworker who participated in the
creation and filing of the defective case plan.

COMMUNITY PARTNERSHIP FOR CHILDREN
Attn: Shayla Rodney, CM III
135 Executive Circle, 2nd Floor
Daytona Beach, FL 32114
386-871-2681

10.     Defendant Latoya Elliot is a DCF caseworker who participated in the
creation and filing of the defective case plan.

COMMUNITY PARTNERSHIP FOR CHILDREN
Attn: Latoya Elliot, CS
135 Executive Circle, 2nd Floor
Daytona Beach, FL 32114
386-546-4900  Ext.1034

11.     Defendant Judge Joan Anthony is sued solely in her official capacity for the
purposes of obtaining prospective injunctive and declaratory relief as she presided
over the dependency case and approved the unsigned case plan, and presided over
the shelter hearing while Plaintiff and her estranged spouse were simultaneously
represented by William Gershwin. Plaintiff does not seek monetary damages
against this defendant.

4

Judge Joan Anthony, Seventh Circuit Judicial Court, Volusia County

a. United States Attorney for the Middle District of Florida
Orlando Division (covers Volusia County)
George C. Young Federal Building and Courthouse
401 West Central Boulevard, Suite 1200
Orlando, FL 32801
Phone: (407) 835-4200

b. Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530-0001

c. Judge's Official Work Address
Steven C. Henderson Judicial Center
125 E. Orange Avenue, Room 106
Daytona Beach, FL 32114
Judicial Assistant: Earlene Malone
Phone: (386) 257-6099

## FACTUAL ALLEGATIONS

12.    Plaintiff alleges the following facts in support of her claims. These

allegations describe a pattern of conduct by state and affiliated personnel that

deprived her of constitutionally protected rights without due process, and reflect

repeated violations of statutory obligations under Florida law and federal

mandates.

**Unlawful School Interviews**

13.    On January 6, 2024, CPC child protective agent Daniella Knight

interviewed Plaintiff's two older children, M.C.1 and M.C.2 at their private school,

Daytona Beach Lourdes Academy without parental consent and without informing the Plaintiff she was the target of an investigation.

14.    The Daytona Beach Lourdes academy school counselor, Anne Quinoes, acted in concert with state agents by initiating the neglect report and subsequently participating in the investigative process which led to her being granted emergency guardianship of Plaintiff's two older children, M.C1 and M.C.2, thereby forfeiting her neutrality and contributing to the unconstitutional seizure of Plaintiff's children.

**Unlawful Removal**

15.    On February 1, 2024, Plaintiff's four children (M.C.1, M.C.2, M.C.3, M.C.4), were seized by FL DCF without emergency or exigent circumstances from their Daytona Beach, Florida residence.

**Constitutional Violations Alleged**

16.    **Fourth Amendment –Unlawful Search/Seizure.** Plaintiff alleges the following State Actors: Family Builder's Program Manager, Marisol Lindsay, Community for Partnership CPI agents;  Daniella Knight, Zachary Martin and Kendal Sheehan, failed to present a warrant and entered the Plaintiff's home without exigent circumstance, parental consent and removed her four children. The intrusion occurred in the absence of judicial authorization or imminent threat,

violating the children's and parent's rights to be free from unreasonable search and seizure.

17.    **Fourteenth Amendment –Procedural Due Process**. By interviewing the children without parental knowledge or the opportunity to be heard, defendant Knight and FL DCF and CPC deprived Plaintiff of Procedural due process protections guaranteed under the Fourteenth Amendment. Plaintiff maintains a protected liberty interest in familial association and in making decisions regarding care, custody and upbringing of her children.

18.    **42 U.S.C. § 1983 – Violation Under Color of State Law**. Defendant Knight, acting under authority delegated by Florida, DCF, functioned as a state actor. The interview constituted state conduct that violated clearly established constitutional rights, actionable under 42 U.S.C. § 1983. Doe vs. Heck, 327 F.3d 492 (7th Cir. 2003) Wallis v Spencer, 202 F.3d 1126 (9th Cir. 2000)

19.    During the removal, Plaintiff was not offered a safety plan despite the fact relative caregivers, the paternal grandparents who had helped raise the children, were living in the home and willing to act as supervisory guardians. The four siblings were separated into three separate care placements violating their right to family integrity.

**Fabricated Evidence**

20.    An affidavit falsifying evidence and misrepresenting facts and events leading up to the removal that was written by CPI Daniella Knight of Community Partnership for Children was submitted to the court as probable cause for a Petition for Placement in an Emergency Shelter Care dated February 1, 2024.

21.    The same pattern of false allegations and misrepresented facts were included in the Order on Shelter and Separate Shelter Review that was e-signed on by Judge Kathleen McNeilly February 5, 2024.

22.    Exculpatory evidence, medical and psychiatric reports by FAA certified medical professional that refuted substance abuse allegations submitted by Plaintiff's estranged husband, were in Florida DCF's possession before the Shelter hearing, the morning of February 2, 2024. Department administrators excluded the evidence in the affidavit and summary reports written by Daniella Knight and reviewed by FL DCF attorney, Kaitlyn Phillpot.(Exhibits X, Y).

23.    The exclusion of the medically verified exculpatory evidence denied Plaintiff a fair evaluation of her fitness as a parent and undermined the truth-seeking function of the shelter hearing process. (Exhibit A)

**Denial of Counsel**

24.    On or right before February 5, 2024, Plaintiff's disability attorney, Soma Priddle, who was representing Plaintiff in a limited capacity, was advised to

withdraw from the proceedings by Judge Kathleen McNeilly which left the Plaintiff without counsel.

25.    On February 5, 2024, without advance notice, or being given a chance to retain alternate counsel, Plaintiff's attorney was substituted with on call ORCC attorney, William Gershwin, to represent her during the Order on Shelter review hearing in front of Judge Joan Anthony.

26.    During the February 5, 2024, Order On Shelter Review hearing, Plaintiff was represented by her husband's attorney, William Gershwin, without her written consent. Although William Gershwin repeatedly stated he was uncomfortable representing both parents simultaneously, Judge Joan Anthony allowed the hearing to proceed. (Exhibit B).

27.    This dual representation of opposing parties without Plaintiff's written consent during the shelter hearings created a material conflict of interest as the husband, T.D, a criminal record of abusing her and he had reported to FL DCF that she had a substance abuse problem. Plaintiff's representation by her estranged husband's attorney without informed consent introduced a conflict of interest that compromised her ability to meaningfully participate in the proceeding and defend her liberty interests.

28.    Plaintiff was only provided a court- appointed attorney after M.C.1, M. C.2, M.C.3 and M.C.4 where adjudicated dependent on May 9, 2024.

**Improper Consent and Document Handling**

29.    On February 7, 2024, the maternal grandmother, Anjou Whelan completed a Unified Florida home study with home study consultants, Shawana Hurt and Jackie Davis. She witnessed them sign the home study and then countersigned the document along with affiliated paperwork which included a criminal background check and g-tube training. She was advised that she would be fingerprinted within two days. The grandmother was not fingerprinted or given a copy of her home study and Davis and Hurt would not return her phone calls.

30.    The CM Shayla Rodney and CS Latoya Elliot did not return the maternal grandmother or Plaintiff's phone calls or emails obstructing the guardianship process for the Florida Unified Home Study and a court ordered Regulation 7 ICPC VT Home Study for five months.

31.    A Petition was filed by the Volusia County Supervisory GAL, Shirley Holland, five months later, during July 2024, to start the court ordered Regulation 7 home study and obtain a copy of the Florida Home study. When a copy of FL home study was provided to the maternal grandmother, Anjou Whelan, it was an unsigned copy that was missing pages, specifically, release forms signed by the applicant. These persistent delays and omissions obstructed kinship placement options and deprived Plaintiff of a meaningful opportunity to preserve custody, violating core principals of procedural fairness.

32.     When questioned on the status of the FL Unified home study during

February 2024, FL DCF CPI, Brandy Bucci, informed Soma Priddle that the

Florida home study had been removed from the FSFN system a few days after the

completed report was uploaded and that she was not allowed to discuss anything

further regarding the case. The unsigned home study (Exhibit C) was filed five

months past the required thirty day filing violated Florida Administrative Code.

65C-28.012. Other Parent Home Assessment and Home Studies for Relative and

Non-Relative Placements.

33.     While waiting for the status of the Florida Home Study, on February, 11,

2024, Plaintiff and the maternal grandmother were denied visitation with M.C.4.

They were both told to leave the Florida Advent Hospital NICU when Shayla

Rodney and Latoya Elliot called the nurses' station and directed the nurses to eject

the grandmother and Plaintiff from the NICU because a foster caregiver was

coming to pick up the infant. The maternal grandmother had travelled from

Vermont and been granted supervisory status by CPI, Brandy Bucci and her

associated case workers, so she and Plaintiff could visit her baby. The Case

Supervisor, Latoya Elliot would not return the Plaintiff's calls regarding the denied

visitation. (Exhibit D)

34.     On or about May 7, after the initial shelter hearings, Plaintiff's court

appointed attorney, John. Glugover, coerced and rushed her into signing a Consent

for Dependency form (Exhibit E) in the court's chaotic, noisy hallway. Mr. Glugover, warned Plaintiff that if she did not sign the Consent for Dependency form right away, she would never see her children again. He also warned Plaintiff that if she mentioned in court or to anyone else that she was the victim of domestic violence, this would prevent her from seeing her children again. Mr. Glugover presented these threats and coercion under the guise of effective counsel. Despite Plaintiff's confusion during this conversation, which lacked transparency, procedural clarity, or adequate explanation, he left when Plaintiff requested him to clarify his warnings about not mentioning the domestic violence aspect of the case before she signed the consent to Dependency form.

35.    Afterwards, the Case Manager, Shayla Rodney, had Plaintiff sign the consent form for Dependency in the hallway and would not answer any of her questions regarding the form. Plaintiff's consent was obtained under threat, confusion and duress—conditions incompatible with informed and voluntary waiver of parental rights, thereby raising serious due process concerns.( Exhibit E).

36.    The notary certificate attached to the Consent for Dependency form contains simultaneously conflicting dates documenting  that Plaintiff swore and signed the document in front of the notary on both May 1, 2024 and May 7, 2024, a clerical error.

37.    There is a pattern of serious procedural errors reflected by administrative
paperwork that was either filed into the case without signatures, incomplete, or
obstructed from being filed which violates Florida statutes. This administrative
misconduct was committed by Community Partnership for Children personnel;
Latoya Elliot, Shayla Rodney, and Jeffie Piere and FL DCF attorney Angela
Hendry and Kaitlyn Phillpot from case initiation. The case plan and Consent to
Adjudication of Dependency forms were filed in the court without signatures and
or with clerical errors. The maternal grandmother's February 7, 2024 Florida
Unified Home Study was pulled down out of the FSFN system and filed into the
case without any signatures and missing pages.

38.    On July 19, 2024, Angela Hendry filed the Florida home study for the
maternal grandmother, Anjou Whelan that had been completed February 7, 2024
five months past the stipulated Florida statutory date for home study protocol
without the required home consultant and subject participant signatures. (ExhibitC)

**Unsigned Case Plan**

39.    On or about May 8, 2024, the DCF attorney representing the children,
Angela Hendry, filed a case plan (Exhibit F) with the court that lacked Plaintiff's
signature and was not developed with her participation, in violation of Fla. Stat. §
39.6011(1) and (3). The cased plan's service certificate with CLS Katilyn
Phillpot's name is blank.

40.    No judicial finding was made that Plaintiff had refused to participate in good faith, as required for case plan approval without a parental signature.

**Coerced Consent and Case Plan Violations**

41.    Plaintiff was misled into believing that her signature on the consent to adjudication of dependency form constituted agreement to the non negotiated and unsigned case plan. This information was communicated to her by her court appointed attorneys, John Glugover, Sherry Cote-Jarvis and CPC personnel Shayla Rodney and Latoya E despite their knowledge that Plaintiff had no opportunity to review, negotiate, or sign the plan. (Exhibit G).

42.    At a hearing on or around May 9, 2024, Plaintiff was pressured by Judge Joan Anthony to verbally assent to the plan under duress. The court deemed this binding despite Plaintiff's objections on the record that she was agreeing to the case plan under duress. The court deeming her verbal assent binding, despite Plaintiff's confusion during the nontransparent proceeding, violated the standards for knowing and voluntary stipulations under Rule 8.310(b), Fla. R. Juv. P.

**Exclusion from Critical Proceedings**

43.    While representing herself pro se from November 15, 2024 through April 2025, Plaintiff was excluded from ex parte communications between the court and opposing counsel regarding a requested case plan revision that would allow the father to complete counseling versus domestic violence classes. This exclusion

from the case plan discussions deprived her of notice and the opportunity to be heard. As a result, Plaintiff was denied the opportunity to present material evidence of domestic violence and abuse, which was central to the underlying dependency proceedings.

**Equal Protection and ADA Violations**

44.    Mid November 2024, while pro se, Plaintiff filled out the appropriate court online viewing forms and had them notarized, but was denied online viewing for court access in violation of the Equal Protection Clause of the Fourteenth Amendment. Plaintiff was also denied ADA accommodations under the American Disabilities Act of 1990, Pub L. No. 101-336 § 1, 104, Stat. 328 (1990).

45.    On December 17, 2024 and January 8, 2025,  when Plaintiff elected to represent herself pro se, attorneys from FL DCF and the father's counsel alleged during  court hearings that Plaintiff was inebriated while appearing in court. The father's attorney, William Gershwin, who had previously represented Plaintiff without her consent, claimed he had an obligation to speak "as an officer of the court" to cast doubt on her fitness and cognition. Plaintiff refuted these claims on the record, stating they stemmed from her estranged husband's legal representative and were without merit. (Exhibit H)

46.    Following these repeated public allegations, FL DCF filed a formal motion objecting to Plaintiff's continued pro se status, claiming she was too incapacitated

to represent herself and appeared under the influence. Plaintiff submitted a

response disputing these allegations, citing her diagnosed medical disability—

severe B12 and foliate deficiency—and a genetic speech condition that surface

when Plaintiff is under stress. Despite The Department's attack on her disabled

status, which DCF alleged under the guise of mental incapacity, the court allowed

Plaintiff to continue pro se.

47.    Intimidated by the attacks on her disabled status when she appeared in court

Plaintiff was coerced into seeking a second court appointed attorney.

**Substance Abuse Evaluation Issues**

48.    On April 25, 2025, Plaintiff's court appointed attorney, Sherry Cote-Jarvis,

related in an email that Plaintiff could not challenge a substance abuse evaluation

ordered by the court, or provide her own FAA certified psychiatric/medical report

that she wished to procure. This failure to inform Plaintiff of her right to challenge

the evaluation and the omission of defining the time, date and scope of the

substance abuse evaluation constitutes a due process violation  under the

Fourteenth Amendment (Lassiter v. Department of Social Services, 452 U.S. 18,

37 (1981) –holding that state intervention in parental rights must comply with due

process standards. (Exhibit I).

49.    Sherry Cote Jarvis also blocked Plaintiff's witnesses and failed to file for

discovery that Plaintiff requested. The coercive actions and harassment by DCF

and CPC staff towards the Plaintiff, the failure to negotiate the case plan with her before or after it was created, the exclusion of Plaintiff from critical discussions and hearing, and the submission of an unsigned case plan to the court--all deprived Plaintiff of her right to meaningful participation in the case planning process and constituted a violation of her procedural due process rights under the Fourteenth Amendment. (Exhibit J).

50.    These violations deprived Plaintiff of her fundamental liberty interest in the care and custody of her children, protected under the Fourteenth Amendment, as articulated by Kelson v. City of Springfield, 767 F.2d 651, 654 (9th Cir. 1985).

51.     Plaintiff reserves the right to include additional factual allegations and legal claims as further evidence becomes available through discovery or ongoing review of case records.

52.    These events taken—taken individually and in totality –reflect a deliberate disregard for Plaintiff's statutory and constitutional rights, and establish a pattern of conduct under color of law that triggered multiple violations of the Fourteenth Amendment's Due Process Clause.

## CLAIMS FOR RELIEF

## EXHIBIT LIST

53.    Plaintiff attaches the following exhibit list in support of her claims.

Exhibit X.  Psychological Evaluation completed by certified medical professional.

Exhibit Y  Medical Evaluation completed by certified medical professional.

Exhibit A  Email Soma Priddle sent to Brandi Bucci regarding medical records

Exhibit B  Order on Shelter Review February 5. 2025 listing William Gershwin representing both parents.

Exhibit C  Anjou Whelan Florida Unified Home Study report

Exhibit D  Email to Case Supervisor regarding Home study Status and Visitation

Exhibit E  Consent for Dependency Form Claire Dreka

Exhibit F. Case Plan for Claire and Todd Dreka

Exhibit G   Email from Sherry Cote-Jarvis advising Plaintiff she had verbally agreed to the unsigned case plan.

Exhibit H  Motion to Oppose Request to enforce Counsel on Plaintiff

Exhibit I  Email from Sherry Cote-Jarvis regarding substance abuse evaluation and remote witness testimony.

Exhibit J  Answer to Termination of Parental Rights Petition

## CAUSES OF ACTION

54.    Plaintiff re-alleges and incorporates all preceding paragraphs, and asserts that her claims satisfy the pleading standard set for allegations, when taken as true, plausibly establish claims for relief under 42 U.S.C. § 1983 and satisfying the standard set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), as the facts alleged plausibly demonstrate violations of federally protected rights.

## Count I – Violation for the Fourth Amendment --Unlawful Search and Seizure

55.     On February 1, 2024, Defendants Shayla Rodney coordinating with Daneilla Knight, directed CPC agents Martin, Lindsay, and Sheehan, acting under color of state law to enter Plaintiff's residence and seize her four minor children without a warrant, court authorization, exigent circumstances, or parental consent. This warrantless and nonconsensual intrusion violated Plaintiff's and her children's rights under the Fourth Amendment to be free from unreasonable searches and seizures.  The conduct mirrors unconstitutional seizures as recognized in *Wallis v. Spencer*, 202 F.3d 1126, 1137 (9th Cir. 2000), and *Calabretta v. Floyd*, 189 F.3d 808, 813–14 (9th Cir. 1999), where removal without judicial authorization or emergency conditions violated clearly established rights. Actionable under 42 U.S.C. § 1983.

## Count II – Procedural Due Process Violation Unlawful Interviews (Fourteenth Amendment – 42 U.S.C. § 1983)

56.     On January 6, 2024, Defendant Knight interviewed Plaintiff's two eldest children at their school without notice to the Plaintiff, without informed consent, and without affording Plaintiff a meaningful opportunity to respond or participate in the investigation. These actions interfered with Plaintiff's parental liberty interest, violating the Fourteenth Amendment. This mirrors the holding in *Doe v.*

*Heck*, 327 F.3d 492, 522 (7th Cir. 2003), where interviewing children at school without parental notification violated due process. Actionable under 42 U.S.C. § 1983.

## Count III – Fabrication and Suppression of Evidence (Fourteenth Amendment – 42 U.S.C. § 1983)

57.     Defendants submitted a falsified affidavit and excluded medical evidence refuting substance abuse allegations. The deliberate suppression of exculpatory material impaired Plaintiff's ability to defend her custodial rights and tainted the shelter hearing process. Courts have recognized that fabrication or withholding of material evidence violates due process, including in *Spencer v. Peters*, 857 F.3d 789, 802–03 (9th Cir. 2017). These acts impaired the accuracy and fairness of judicial determinations, violating Plaintiff's constitutional rights under 42 U.S.C. § 1983.

58.     **Count IV – Conflict of Interest and Denial of Effective Counsel**

Plaintiff was represented by her estranged spouse's attorney, William Gershwin, without consent or written permission during a critical hearing. The Court, presided over by Judge Anthony, permitted the hearing to proceed despite Mr. Gershwin's explicit statement of discomfort and ethical concerns representing both parents. Plaintiff was denied timely access to alternate counsel that created a conflict of interest that undermined her defense. Plaintiff was represented by her

estranged spouse's attorney without informed consent, during a proceeding where the attorney acknowledged a conflict. Such conflict, if unwaived, undermines the integrity of legal representation, as discussed in *Wood v. Georgia*, 450 U.S. 261, 271 (1981) and *Holloway v. Arkansas*, 435 U.S. 475 (1978). The violation of her right to conflict-free representation is actionable under 42 U.S.C. § 1983.

59.    **Count V – Kinship Placement Obstruction (Fourteenth Amendment – 42 U.S.C. § 1983)**

The February 7, 2024 Florida Unified Home Study completed by maternal grandmother Anjou Whelan was neither timely filed nor properly documented, obstructing kinship placement. Defendants Rodney, Elliot, Pierre, Hendry, and Phillpot delayed and mishandled signed reports; including removing the home study from FSFN and submitting unsigned copies months later. The unsigned and incomplete document violated both procedural fairness and Florida administrative rules. The prolonged delay and exclusion from procedural access violate Florida Administrative Code § 65C-28.012 and mirror procedural deprivation addressed in *Santosky v. Kramer*, 455 U.S. 745, 753 (1982), where parents were denied fair opportunities to maintain custody. Actionable under 42 U.S.C. § 1983.

**Count VI – Coerced Consent to Dependency (Fourteenth Amendment – Procedural Due Process)**

21

60.    Plaintiff's signature on the Consent to Dependency was obtained under threat and duress by John Glugover who failed to explain consequences and discouraged disclosure of domestic violence, contravening requirements for knowing and voluntary waiver under *In re C.W.*, 816 So. 2d 1268 (Fla. 2d DCA 2002) and Rule 8.310(b), Fla. R. Juv. P. Such coercive conduct violated Plaintiff's procedural due process rights and undermined the validity of consent as required under *Florida Dept. of Children & Families v. J.B.*, 768 So. 2d 1060 (Fla. 2000). Actionable under 42 U.S.C. § 1983.

## Count VII – Enforcement of Defective Case Plan

61.    **(Fla. Stat. § 39.6011; 42 U.S.C. § 1983)**

On or about May 8, 2024, the court approved and enforced a case plan filed by DCF attorney Hendry was filed without Plaintiff's signature or meaningful participation, contrary to Fla. Stat. § 39.6011(1), (3), which requires a judicial finding of refusal to participate in good faith. Enforcement without procedural safeguards violates statutory law and due process as outlined in *Lassiter v. Dep't of Social Services*, 452 U.S. 18 (1981), and is actionable under 42 U.S.C. § 1983.

## Count VIII – Exclusion from Material Proceedings (Fourteenth Amendment – Procedural Due Process)

62.    While proceeding pro se between November 2024 and April 2025, Plaintiff was excluded from ex parte communications regarding substantive modifications to the father's case plan. These omissions denied Plaintiff notice and a meaningful

opportunity to be heard regarding matters central to her children's safety and violated her Fourteenth Amendment rights.

## Count IX – ADA and Equal Protection Violations (Americans with Disabilities Act; Fourteenth Amendment)

63.    While representing herself pro se and disabled, Plaintiff was denied remote viewing access to court records and virtual hearing participation, as well as ADA accommodations for her speech and stress-related disability. These denials impaired her access to justice and violate federal equal protection guarantees. Defendants' denial of reasonable access violated Plaintiff's rights under the Americans with Disabilities Act, Pub. L. No. 101-336 § 1, 104 Stat. 328 (1990), and the Equal Protection Clause of the Fourteenth Amendment.

## Count X – Obstruction of Medical Defense and Evaluation Challenges (Fourteenth Amendment – Procedural Due Process)

64.    Plaintiff's court-appointed counsel, Sherry Cote-Jarvis, misinformed Plaintiff regarding her rights to challenge a court-ordered substance abuse evaluation and refused her offer to acquire new FAA-certified countervailing medical evidence. These procedural failures deprived her of the opportunity to rebut allegations and defend her parental fitness. These omissions constitute violations of procedural due process as articulated in *Lassiter v. Department of Social Services*, 452 U.S. 18 (1981), and are actionable under 42 U.S.C. § 1983.

## LEGAL BASIS

65.    Plaintiff brings this action under 42 U.S.C. § 1983, which allows individuals to sue state actors who, while acting under color of state law, violate rights secured by the Constitution or federal statutes.

66.    The Fourteenth Amendment which guarantees that no person shall be deprived of life, liberty, or property without due process of law—applying with particular force to parental rights.

67.    Florida Statutes § 39.6011(1) and (3), which require meaningful parental participation and judicial findings before enforcing a case plan lacking a parental signature.

68.    Florida Rule of Juvenile Procedure 8.310(b), mandating that any stipulation entered into a dependency proceeding be knowing, intelligent, and voluntary;

• Relevant case law, including J.B. v. DCF, 768 So. 2d 1060 (Fla. 2000) and In re C.W., 816 So. 2d 1268 (Fla. 2d DCA 2002), underscoring that coerced or uninformed parental consent is procedurally invalid.

69.    Plaintiff's allegations, taken together, demonstrate a pattern of state action inconsistent with these legal standards, entitling her to declaratory and injunctive relief as well as damages under 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

70.    **Declare** that Defendants' actions violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution, as well as rights under the Americans with Disabilities Act;

71.    **Enjoin** further enforcement of the defective and unsigned case plan and prohibit reliance on coerced or procedurally invalid consent documents;

72.    **Order** the immediate reunification of Plaintiff with her minor children, or in the alternative, direct that kinship placement be pursued with maternal relatives under appropriate procedural safeguards;

73.    **Award** compensatory damages against the individual defendants for emotional harm, reputational injury, and loss of parental liberty;

74.    **Award** punitive damages where applicable to deter future misconduct and vindicate Plaintiff's constitutional rights;

75.    **Grant** reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

80.    **Provide** any other relief that this Court deems just and proper in law or equity.

DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

_____
/S/ St. Claire Dreka, Pro Se Plaintiff
433 Vermont Ave
Daytona Beach, FL 32118
clairwhelan@aol.com